# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 31, 2023

Lyle W. Cayce
Clerk

———————

No. 22-60024

———————

Pamela Cashaw,

*Petitioner—Appellant*,

*versus*

Commissioner of Internal Revenue,

*Respondent—Appellee*.

———————————————————

Appeal from a Decision of the
United States Tax Court
Tax Court No. 9352-16L

———————————————————

Before Richman, *Chief Judge*, and Stewart and Douglas, *Circuit Judges*.

Per Curiam:[*]

Pamela Cashaw appeals from the judgment of the Tax Court holding her liable for trust fund recovery penalties (TFRPs) assessed against her by the Internal Revenue Service (IRS). Because we conclude on the record before us that Cashaw was a responsible person who willfully failed to pay over taxes, we affirm.

——————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-60024

# I

Cashaw worked at Riverside General Hospital (Riverside), beginning in 1978 as a pharmacist, but later assuming administrative responsibilities. In October 2012, Riverside's chief administrator was indicted for participating in a scheme to defraud Medicare and was removed from his position at the hospital. Cashaw has maintained, and the Government does not dispute, that a federal district judge overseeing an administrative proceeding directed that Cashaw serve as the temporary administrator, although the record is not entirely clear as to the nature of the proceedings before that judge. Cashaw was given nonexclusive signature authority for the former administrator while his trial was pending. As chief administrator, Cashaw oversaw "the functionality of the hospital," including Riverside's payroll and other operations; reviewed the hospital's expenses; signed checks as one of two individuals whose signatures were required on all checks; and attended board meetings. Cashaw served in this role until she resigned on April 18, 2014, citing a "toxic environment" at the hospital that included "undue stress, interference, [and] lack of integrity."

Riverside experienced serious financial distress during Cashaw's tenure as chief administrator due in part to its Medicaid and Medicare funding being withdrawn. In 2013, one of Riverside's major creditors, Dixon Financial Services, initiated legal proceedings in Texas state court. As part of the lawsuit, Riverside and Dixon entered into four Texas Rule of Civil Procedure Rule 11 Agreements (Rule 11 Agreements) that addressed Riverside funding, payment of creditors, property sales, construction contracts, and other matters. In 2013 and 2014, Riverside failed to pay portions of its federal tax liabilities to the IRS.

The IRS audited Riverside's unpaid employment taxes and assessed TFRPs against Cashaw. Cashaw failed to pay the assessed liabilities, and the

No. 22-60024

IRS sent her a Notice of Intent to Levy and Right to a Hearing and Notice of Federal Tax Lien Filing and Your Right to a Hearing.  She requested a collection due process (CDP) hearing to dispute her liability for the amounts assessed.  The Appeals Officer to whom the hearing was assigned concluded that Cashaw was liable for the penalty and sustained the lien filing and decision to collect by levy.  Cashaw timely petitioned for review in the Tax Court.  The Tax Court remanded the case to the Appeals Office, which determined that Cashaw was not liable for the full tax liability assessed against her.  The matter was then restored to the Tax Court's general docket.  Following a bench trial, the Tax Court held that Cashaw was liable for employment taxes, in the amount of $173,630, withheld but not turned over between July 1, 2013 and Cashaw's resignation in April 2014.  Cashaw appeals, arguing that she was not a responsible person who willfully failed to remit the taxes.  Cashaw also argues that the IRS abused its discretion and violated her due process rights with inadequate procedures.

## II

"In a collection due process case in which the underlying tax liability is properly at issue, the Tax Court (and hence this Court) reviews the underlying liability *de novo* and reviews the other administrative

No. 22-60024

determinations for an abuse of discretion."[1]    Cashaw's underlying tax liability is properly at issue here,[2] and so we review her liability de novo.

Cashaw argues that she is not liable for the TFRPs because she does not meet the requirements of 26 U.S.C. § 6672, the provision of the Internal Revenue Code governing TFRPs.    The Internal Revenue Code requires employers to withhold from employees' wages federal income taxes and social security contributions.[3]    The employer holds these funds "in trust for the United States."[4]    When a corporate employer fails to pay over the trust funds, § 6672(a) imposes a penalty equal to the entire amount of the unpaid taxes on "any person" required to collect, account for, or pay over the withheld taxes who "willfully" fails to do so.    Liability for the penalty is established if a person is (1) a "responsible person" (2) who "willfully" failed to pay over the withheld taxes.[5]    "In § 6672(a) cases, once the

---

[1] *Jones v. Comm'r*, 338 F.3d 463, 466 (5th Cir. 2003) (citing *Craig v. Comm'r*, 119 T.C. 252, 260 (2002)); *see also Craig*, 119 T.C. at 260 (explaining that the Tax Court reviews a taxpayer's liability under the de novo standard if "the validity of the underlying tax liability is at issue," and that a taxpayer's underlying tax liability may be at issue only if the taxpayer "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability" (citations omitted)); *cf. Est. of Duncan v. Comm'r*, 890 F.3d 192, 197 (5th Cir. 2018) ("When reviewing the result of a CDP hearing in which the underlying tax liability is not properly at issue, the court must determine whether IRS Appeals abused its discretion." (citations omitted)).

[2] *See* 26 U.S.C. § 6330(c)(2)(B) ("The person may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability.").

[3] *Id.* §§ 3102, 3402.

[4] *Barnett v. IRS*, 988 F.2d 1449, 1453 (5th Cir. 1993) (citing 26 U.S.C. § 7501(a)).

[5] *Id.* (citations omitted).

No. 22-60024

Government offers an assessment into evidence, the burden of proof is on the taxpayer to disprove h[er] responsible-person status or willfulness."[6]

## A

Cashaw first asserts that she is not a "responsible person" under § 6672. A responsible person is any person "required to collect, truthfully account for, and pay over [employment tax] imposed by this title."[7] "This circuit generally takes a broad view of who is a responsible person under § 6672,"[8] and "cases *not* finding § 6672 responsibility are relatively few and far between."[9] In *Barnett v. IRS*,[10] we listed six "circumstantial indicia of responsible person status when a party lacks the precise responsibility of withholding or paying employees' taxes."[11]

> We ask whether such a person: (i) is an officer or member of the board of directors; (ii) owns a substantial amount of stock in the company; (iii) manages the day-to-day operations of the business; (iv) has the authority to hire or fire employees; (v) makes decisions as to the disbursement of funds and payment of creditors; and (vi) possesses the authority to sign company checks. No single factor is dispositive.[12]

---

[6] *Id.* (citations omitted).

[7] 26 U.S.C. § 6672(a).

[8] *Gustin v. United States*, 876 F.2d 485, 491 (5th Cir. 1989) (citing *Wood v. United States*, 808 F.2d 411, 415 (5th Cir. 1987)).

[9] *Barnett*, 988 F.2d at 1456.

[10] 988 F.2d 1449 (5th Cir. 1993).

[11] *Id.* at 1455.

[12] *Id.* (citations omitted).

"The crucial inquiry is whether a party . . . , by virtue of h[er] position in (or vis-a-vis) the company, could have had 'substantial' input into [withholding and paying employees' taxes], had [s]he wished to exert h[er] authority."[13]

Cashaw argues that the first five *Barnett* factors are not present because she was not an officer or member of the board of directors, did not own any stock in Riverside, did not manage Riverside's day-to-day operations, did not have hiring or firing authority, and did not make decisions as to disbursement of funds. She claims that the only factor that may arguably be present in this case is the limited and nonexclusive authority to sign checks on behalf of Riverside. The Government counters that "the Tax Court correctly held that Cashaw was a responsible person for the periods at issue because she was the chief executive administrator responsible for overseeing the functionality of the hospital, including its payrolls, and she signed checks, transferred funds between accounts, prioritized payments to some creditors over others, and participated in board meetings."

Cashaw falls within the "sweeping net of § 6672 responsibility."[14] The record shows that *Barnett* factors (iii), (v), and (vi) are present. During trial, Cashaw explained that she "met with many people" to "see if [they] c[ould] do anything to get bills paid" and that as the temporary administrator she "overs[aw] the functionality of the hospital." She "check[ed] over payrolls" and signed checks on behalf of Riverside. Although Cashaw's testimony indicates that she was presented with the checks to sign, it also shows that she nevertheless reviewed the checks "to determine if [they were payments for] nursing staff, auxiliary staff, and . . . the utilities and other vendors as required for patient care or supplies." Cashaw described at least

---

[13] *Id.*

[14] *Id.* at 1457.

No. 22-60024

one instance in which she refused to sign a check because she disagreed with how those funds would be used.  While Cashaw might not have been "the person *most* responsible for the payment of the taxes," she was *a* responsible person, and "the statute expressly applies to 'any' responsible persons."[15]

**B**

Cashaw also asserts that, even if she is a responsible person, she did not "willfully" fail to pay the trust fund taxes at issue.  "Willfulness under § 6672 requires only a voluntary, conscious, and intentional act, not a bad motive or evil intent."[16]  Normally, "evidence that the responsible person paid other creditors with knowledge that withholding taxes were due at the time to the United States" will establish willfulness.[17]

The Tax Court centered its holding on the proposition that "[w]illfulness is typically proven by evidence that a responsible person paid other creditors when withholding taxes were due to the Federal Government."  Since Cashaw signed checks to vendors and creditors while Riverside failed to pay the United States, the Tax Court held that Cashaw acted willfully.  Cashaw counters that the Tax Court misinterpreted our holding in *Gustin v. United States*.[18]  She alleges "*Gustin* stands for the proposition that where a responsible person (1) is repeatedly promised by his or her employer that the taxes would get paid and (2) has no reason to believe that the employer would not resolve any tax delinquency, then he or she

---

[15] *Id.* at 1455 (citing *Howard v. United States*, 711 F.2d 729, 737 (5th Cir. 1983)).

[16] *Id.* at 1457 (citations omitted); *see also Logal v. United States*, 195 F.3d 229, 232 (5th Cir. 1999) ("A responsible person acts willfully if he knows the taxes are due but uses corporate funds to pay other creditors, or if he recklessly disregards the risk that the taxes may not be remitted to the government." (internal citations omitted)).

[17] *Barnett*, 988 F.2d at 1457 (citation omitted).

[18] 876 F.2d 485 (5th Cir. 1989).

cannot be found to be willful." Thus, because Cashaw was promised that the taxes would be paid, she argues that she did not willfully fail to pay them.

The facts of *Gustin* do not support Cashaw's reading and are distinguishable from her case. Gustin was a corporation president who was assessed TFRPs for two tax periods.[19] For the first period, the owners of the corporation had assured Gustin not only that the taxes would be paid but also that the taxes "had been paid."[20] Despite these assurances, Gustin arranged for [the owners] to meet" with the IRS, and "he was informed afterward that the parties had reached an agreement and that the taxes would be paid immediately."[21] We held that, given that Gustin "made every reasonable effort to see that the [taxes from the first period] were paid, that he was repeatedly promised by the owners of the corporation that the taxes would be paid and that he had no reason to believe that the meeting between [the IRS] and the owners of the corporation had not resolved the. . . delinquency," Gustin did not willfully fail to pay the taxes for the second period.[22] As for the taxes for the first period, we instructed the district court to consider whether Gustin's failure to pay over the taxes "was willful in light of his efforts to see that the taxes were paid and the representations made to him by the owners of the company that the taxes would be or had been paid."[23]

Cashaw argues that, just like the taxpayer in *Gustin*, she "should not be found to have willfully failed to pay a tax she was told would be resolved." However, the record does not show that Cashaw made "every reasonable

---

[19] *Id.* at 487.

[20] *Id.*

[21] *Id.*

[22] *Id.* at 493.

[23] *Id.* (citation omitted).

effort"[24] to ensure the taxes were paid, and "we have repeatedly rejected the argument that a taxpayer's good faith belief that payment for the taxes had been arranged is a defense to personal liability under § 6672."[25] Cashaw's testimony at trial establishes that she was aware Riverside was not paying its withholding taxes, and she made the choice to prioritize essential patient services. As a responsible person, "[o]nce [Cashaw] became aware of the tax liability, [she] had a duty to ensure that the taxes were paid before any payments were made to other creditors."[26] By authorizing checks for the payment of vendors and employees' wages, Cashaw willfully failed to pay the trust fund taxes.

Cashaw also argues that her duty to her patients negates a finding of willfulness. At trial, Cashaw testified to the competing interests that left her "in a difficult position" as chief administrator. She put "the care of the patients" at the "forefront" because "[t]hat's what the hospital's there for, to treat and serve patients." She spoke to the standards of care set by the state of Texas, as well as the financial constraints imposed by the Rule 11 Agreements. As discussed above, the willfulness inquiry does not turn on

---

[24] *See id.*

[25] *Conway v. United States*, 647 F.3d 228, 237 (5th Cir. 2011) (citations omitted); *see also Bowen v. United States*, 836 F.2d 965, 968 (5th Cir. 1988) ("We have not accepted the mere reasonable expectation of sufficient funds at a later date as a defense to a charge of willful failure to comply with the commands of § 6672."); *Mazo v. United States*, 591 F.2d 1151, 1157 (5th Cir. 1979) ("[A]ppellants' primary argument is that an issue was created with respect to willfulness by their contention that [the controller] misled them by asserting that he had taken care of the matter or would take care of the matter for them. However, once they were aware of the liability to the government, they were under a duty to ensure that the taxes were paid before any payments were made to other creditors.").

[26] *Barnett v. IRS*, 988 F.2d 1449, 1457 (5th Cir. 1993) (citing *Mazo*, 591 F.2d at 1154).

motive.[27]  Despite any other conflicting duties, "[o]nce [Cashaw] became aware of the tax liability, [she] had a duty to ensure that the taxes were paid before" authorizing payments to vendors or employees.[28]

## C

Finally, Cashaw argues that even if she is found to be a responsible person who acted willfully, she had reasonable cause for the failure to pay the trust fund taxes.  While we have recognized that "reasonable cause" may negate a finding of willfulness for purposes of § 6672, we have cautioned that "reasonable cause should have a very limited application,"[29] and "no taxpayer has yet carried that pail up the hill."[30]  The reasonable cause defense may not "be asserted by a responsible person who knew that the withholding taxes were due, but who made a conscious decision to use corporate funds to pay creditors other than the government," including the wages of employees.[31]  As explained above, Cashaw authorized checks to pay staff, utilities, and vendors despite being aware that withholding taxes were due.  The reasonable cause defense does not apply to her.

Cashaw offers two out-of-circuit tests for determining whether reasonable cause excuses her failure to pay over taxes and urges us to apply

---

[27] *See Newsome v. United States*, 431 F.2d 742, 745 (5th Cir. 1970) ("It has been consistently held by this Court and other courts that 'willfully,' as used in section 6672, does not require a criminal or other bad motive on the part of the responsible person, but simply a voluntary, conscious and intentional failure to collect, truthfully account for, and pay over the taxes withheld from the employees." (citations omitted)).

[28] *See Barnett*, 988 F.2d at 1457 (citing *Mazo*, 591 F.2d at 1154).

[29] *Newsome*, 431 F.2d at 746-47.

[30] *Bowen v. United States*, 836 F.2d 965, 968 (5th Cir. 1988) (citations omitted).

[31] *Logal v. United States*, 195 F.3d 229, 232-33 (5th Cir. 1999) (first citing *Newsome*, 431 F.2d at 747 n.11; and then citing *Frazier v. United States*, 304 F.2d 528, 530 (5th Cir. 1962)).

them here.  Cashaw does not explain why we should adopt either test, nor how the tests would operate within our existing caselaw on § 6672 liability. We decline to adopt either test.

## III

Last, Cashaw takes issue with IRS procedures, contending that the agency abused its discretion and violated her due process rights with inadequate procedures.  Cashaw forfeited these procedural arguments by failing to raise them before the Tax Court.[32]

"The Tax Court's review is 'limited to issues that were properly raised during the CDP hearing.'"[33]  Under § 6330(c)(2)(A), Cashaw was permitted to "raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy."  Despite Cashaw's assertions otherwise, the record contains no indication that she challenged the IRS procedures during the CDP hearing.  We will not consider such challenges now for the first time on appeal.

\* \* \*

For the foregoing reasons, we AFFIRM the judgment of the Tax Court.

---

[32] *See Lyles v. Medtronic Sofamor Danek, USA, Inc.*, 871 F.3d 305, 310 (5th Cir. 2017) (stating the general rule that we will not consider arguments that were not presented to the district court); *Stearman v. Comm'r*, 436 F.3d 533, 537 (5th Cir. 2006) (applying the rule to an appeal from the Tax Court); *see also McElhaney v. Comm'r*, 651 F. App'x 256, 260 (5th Cir. 2016) (unpublished) (per curiam) ("[Taxpayer] never presented this argument to the Tax Court, so we do not consider it." (citing *Savers Fed. Sav. & Loan Ass'n v. Reetz*, 888 F.2d 1497, 1501 n.5 (5th Cir. 1989))).

[33] *Est. of Duncan v. Comm'r*, 890 F.3d 192, 198 (5th Cir. 2018) (quoting *Keller Tank Servs. II, Inc. v. Comm'r*, 854 F.3d 1178, 1189 (10th Cir. 2017)).