**W. Eugene DILLARD, Appellant,**

v.

**George D. PATTERSON, District Director of Internal Revenue for District of Alabama, and United States of America, Intervenor, Appellees.**

**No. 20316.**

United States Court of Appeals Fifth Circuit.

Dec. 18, 1963.

James H. Faulkner, Birmingham, Ala., for appellant.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, Carolyn R. Just, Frederick Youngman, Attys., Dept. of Justice, Washington, D. C., Macon L. Weaver, U. S. Atty., Birmingham, Ala., for appellees.

Before RIVES, WISDOM and GEWIN, Circuit Judges.

GEWIN, Circuit Judge.

This case involves the imposition of a penalty on W. Eugene Dillard in an amount equal to the withholding and F.I.C.A. taxes withheld from employees of Bessemer Materials Company (Bessemer), an Alabama corporation, now a bankrupt, as provided and authorized by § 6672 of the Internal Revenue Code of 1954.[1] Dillard was President of the corporation and makes no point about the duty imposed on him as the responsible officer of the corporation, and does not question the liability of the corporation for the taxes involved. He does contest the imposition of the penalty. The tax liability imposed upon the officer of a corporation in a proper case is a "penalty". It is not a criminal penalty, but imposes civil liability in the amount of the tax on the agent, officer or employee of an employer who has the duty, or is responsible for the collection and payment of the tax, and who willfully fails either to collect the tax or to pay it over.[2]

Bessemer Building Materials became a subcontractor for a low rent housing project in Bessemer, Alabama, with H. L. Coble Company (Coble), the prime contractor. The initial contract was in the amount of $500,000.00, but soon after the execution of the initial contract, Bessemer entered into a number of additional subcontracts with Coble amounting to more than a million dollars. The contract involved placed responsibility for the payment of taxes on Bessemer. The employees of Bessemer increased from 32 to 260 and the payroll ran as high as $18,000.00 a week. The original contract was made in September 1959 and in March 1960 Bessemer began to experience financial difficulties. In accordance with an agreement, Coble began advancing money to Bessemer for its payroll and for its suppliers and materialmen. In obtaining funds from Coble, Bessemer's payroll was made out on forms which showed the number of employees, hours worked, rate of pay, total wages, state taxes, insurance, union dues, the taxes involved here, and the net amount owed. Advances for the payroll did not include payroll deductions. Checks for total amounts advanced were delivered by Coble to Bessemer and the checks in turn were endorsed by Bessemer, deposited, and individual checks were issued to each employee. Dillard signed the checks. Starting in April checks for suppliers and materialmen were made payable jointly to Bessemer and the supplier or materialmen rather than to Bessemer alone. Later Coble issued checks directly to suppliers and materialmen.

Some disputes developed between Coble and Bessemer. Coble testified that Dillard cashed one of Coble's payroll checks, failed to pay the workmen, and told Coble that he did not remember how he had spent all of the money, but had used

---

1. § 6672 is as follows:

SEC. 6672. FAILURE TO COLLECT AND PAY OVER TAX OR ATTEMPT TO EVADE OR DEFEAT TAX.

"Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable."

(26 U.S.C. 1958 ed., Sec. 6672.)

2. § 6671 provides as follows:

SEC. 6671. RULES FOR APPLICATION OF ASSESSABLE PENALTIES.

* * *

"(b) Person defined.—The term 'person', as used in this subchapter, includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs."

(26 U.S.C. 1958 ed., Sec. 6671.)

part of it to pay off a note. On one occasion, in September 1960, when payroll funds were not used to meet the entire payroll, a strike resulted; and then, testified Coble, the workmen were paid direct with checks from Coble starting about September 1960. As to such payments, Coble deducted withholding taxes. Dillard claimed that he called on Coble for sufficient funds with which to pay sums withheld, including the taxes in question, but that Coble refused. During the course of their dealings, Bessemer received unrestricted sums from Coble in excess of $270,000.00. The record does not show conclusively whether such sums were already earned by Bessemer when received or whether they were loans or advances. The record does show that Bessemer had sufficient unrestricted funds in its possession to pay over to the Government the taxes withheld. On February 29, 1960, Bessemer's balance sheet shows assets of $450,000.00 and liabilities of $320,000.00. On April 30, 1960, the balance sheet shows assets of $538,-000.00 and liabilities of $406,000.00.

The employer's (Bessemer's) quarterly withholding tax return form was signed by Dillard as President, including returns for the 2nd and 3rd quarters of 1960. The return for the 2nd quarter ending June 30, 1960, shows the amount of $38,693.02 due, but no depositary receipts were submitted. The company auditor at that point advised the appellant that funds for the taxes should be deposited. The record shows that Dillard was conscious of his statutory obligation with respect to the taxes. The return for the 3rd quarter ending September 30, 1960, shows the amount of $28,223.04 due with depositary receipts attached of only $1,792.99. Taxes for the 2nd and 3rd quarters are at stake in this case.

The Commissioner assessed the penalty against the appellant, W. Eugene Dillard, and his brother, J. Harris Dillard. They paid $100.10 which they claimed was the amount of withholding and F.I.C.A. taxes for one employee for the 3rd quarter of 1960. A claim for refund of that amount was filed and disallowed. Both W. Eugene Dillard and J. Harris Dillard filed suit for refund of the $100.10. The United States was permitted to intervene and filed a counterclaim for taxes for the 2nd and 3rd quarters, which amounted to $54,890.68 after allowing proper credits. After all the evidence was introduced, the court directed a verdict of the jury based on special interrogatories holding that W. Eugene Dillard was the responsible person and that he willfully failed to account for and pay over the taxes in question. Judgment was entered dismissing the complaint of W. Eugene Dillard and his brother, and judgment was entered for the United States for the above mentioned sum against W. Eugene Dillard only.[3]

Where the employer has withheld the tax, but failed to pay it over to the United States, the employee is credited with the amount withheld and no additional payment is required of the employee. Unless the Government has recourse for collection of the tax from the employer or the responsible agent of the employer, the tax is lost. United States Fidelity & Guaranty Co. v. United States, 10 Cir. 1952, 201 F.2d 118, 120.

In our view, the record conclusively shows that the corporation had sufficient assets with which to pay the taxes due, but Dillard as the responsible officer or person made a deliberate choice to pay other creditors instead of paying the Government. We agree with the trial court and conclude that Dillard as the responsible officer of the corporation made the choice voluntarily, consciously and intentionally. It is not necessary that there be present an intent to defraud or to deprive the United States of the taxes; nor is it necessary that bad motives or wicked design be proved to in-

3. The directed verdict found that J. Harris Dillard was not a person responsible for the tax under the statute; and his complaint and the complaint of the United States against him were dismissed. No appeal has been taken from that portion of the judgment.

voke the provisions of the statute. The conduct here involved was willful within the meaning of the statute. Bloom v. United States, 9 Cir. 1960, 272 F.2d 215; Frazier v. United States, 5 Cir. 1962, 304 F.2d 528.

The judgment is affirmed.